**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FUEL RECHARGE YOURSELF, INC.** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-4477** |
| | : | |
| **AMCO INSURANCE COMPANY, et al.** | : | |

---

**McHUGH, J.** **February 11, 2021**

**MEMORANDUM**

This is another in a series of cases pertaining to what, if any, insurance coverage exists to protect businesses from income losses and expenses sustained during state-ordered shutdowns resulting from the COVID-19 pandemic. Here, a Philadelphia-based delicatessen alleges that its insurance carrier wrongfully denied a claim to recoup substantial and ongoing financial losses directly attributable to a series of COVID-19 closure orders. In response, the carrier invokes a "Virus Exclusion" provision that denies coverage for "loss or damage caused directly or indirectly" by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Because I conclude that the insurer's Virus Exclusion clause unambiguously applies to the claim here, I am obligated to grant Defendant's motion to dismiss.

**I. Factual Background**

Plaintiff, Fuel Recharge Yourself, Inc. ("Fuel"), is a Philadelphia-based delicatessen. *See* First Am. Compl. ¶ 1, ECF No. 16. Prior to the onset of the COVID-19 pandemic, Plaintiff purchased a commercial multiple peril insurance policy from AMCO Insurance Company[1]

[1] Plaintiff also names "Nationwide d/b/a/ Amoco Insurance Company" as a Defendant. But the pleadings show that Nationwide did not issue the policy and is therefore not properly named as a Defendant. *See* First Am. Compl. ¶ 2. Plaintiff's claims as to Nationwide will also be dismissed.

("Defendant"). *Id.* ¶ 2. Plaintiff's policy is an "all-risk" policy that covers all non-excluded business losses. *Id.* ¶ 3.

In mid-March 2020, Plaintiff suspended its business operations in response to an order from Pennsylvania Governor Tom Wolf that mandated the closure of all non-life sustaining businesses to reduce the spread of COVID-19. *Id.* ¶ 6. Fuel asserts that it sustained significant and ongoing losses and has invoked the Business Income, Civil Authority, and Extra Expense provisions of its insurance policy. *Id.* ¶ 7. Defendant denied Plaintiff's claim on August 26, 2020. *Id.* ¶ 8.

Plaintiff's policy covers "loss of Business Income" when sustained under the following circumstances: (1) "due to the necessary suspension of 'operations' during the "period of restoration'"[2] ("Business Income Coverage" provision), *see* First Am. Compl. Ex. 1, at 19, ECF No. 16-1, and (2) due to action of a civil authority ("Civil Authority" provision). *Id.* at 20. The Policy also covers the "extra expense" the policyholder incurred during the "period of restoration," *id.* at 19, and on account of the actions of a civil authority. *Id.* at 20. The applicability of the Business Income and Extra Expense provisions depends upon a single triggering event: the losses and/or extra expenses must be caused by "direct physical loss of or damage to property." *Id.* at 19.

With respect to the Civil Authority provision, coverage is triggered when both of the following conditions are met:

---

[2] The "period of restoration" is defined as the period of time that: (a) begins the number of hours shown in the Declarations after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and (b) ends on the earlier of: (i) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed or quality; or (ii) The date when the business is resumed at a new permanent location. *See* First Am. Compl. Ex. 1, at 52.

> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 20.

Defendant argues the claims asserted do not fall within the scope of the coverage. Separately, it argues that the "Virus Exclusion" provision of the policy bars Fuel's claim. *See* Def.'s Mem. L. Supp. Mot. Dismiss 21, ECF No. 18-2 ("Def.'s Mem."). Within the policy's "Exclusions" section is a provision that the insurer "will not pay for loss or damage caused directly or indirectly" by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." First Am. Compl. Ex. 1, at 33, 35. The exclusion provides that it applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id*. at 33.

## II. Standard of Review

Motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. Discussion

The parties do not contest this Court's jurisdiction[3] and agree that Pennsylvania law applies to the policy at issue. *See* Def.'s Mem. 10; Pl.'s Am. Resp. Opp'n, at 11, ECF No. 25-1 ("Pl.'s

[3] This action seeks both declaratory relief and legal relief based on Pennsylvania contract law. When a complaint contains claims for both legal and declaratory relief, a district court must first determine whether the legal claims are independent of the declaratory claims. *See Rarick v. Federated Service Insurance Company*, 852 F.3d 223, 229 (3d Cir. 2017). A claim is "independent" of a declaratory claim when it is sufficient to invoke this Court's jurisdiction. *Id.* If the legal claims are independent, the court has a "virtually unflagging obligation," to hear those claims, subject to *Colorado River* abstention. *Id.* (citing *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817–19 (1976)). Here, *Colorado River* abstention does not apply, as there is no parallel ongoing state court proceeding. *See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009). Plaintiff has also

Am. Opp'n"). Under Pennsylvania law, an insurance policy "must be construed in its plain and ordinary sense, and the policy must be read in its entirety." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 630 Pa. 1, 24 (2014) (internal citation omitted). Contract language is ambiguous, and must be construed in favor of the insured, "if it is reasonably susceptible to more than one construction and meaning." *Id.* Because I conclude that that the Virus Exclusion unambiguously applies to Fuel's claim for loss of business income and extra expenses, I must grant Defendant's motion to dismiss with respect to Plaintiff's breach of contract claim and request for declaratory relief.

A. Applicability of the Virus Exclusion

The Virus Exclusion bars claims for "loss or damage caused directly or indirectly … by [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *See* First Am. Compl. Ex. 1, at 33, 35. Plaintiff contends 1) that Defendant is estopped from enforcing this provision; 2) that the provision does not apply to the circumstances at issue; and 3) that the provision does not apply to claims for extra expenses. *See* Pl.'s Am. Opp'n 20–26. I find these arguments unpersuasive because the doctrine of regulatory estoppel does not apply on the facts here, and the virus exclusion squarely bars Fuel's claim for business losses and extra expenses.[4]

As an initial matter, Defendant is not estopped from asserting the Virus Exclusion. Plaintiff invokes the doctrine of regulatory estoppel, which requires the plaintiff to show that (1) the defendant insurer made statements to the Pennsylvania Insurance Department; and (2) then took a

successfully invoked diversity jurisdiction, as the parties are diverse and the amount in controversy exceeds $75,000. *See* First Am Compl. ¶¶ 14-17. Accordingly, under *Rarick*, I will exercise jurisdiction. 852 F.3d at 229.

[4] Because I find that the Virus Exclusion operates to bar coverage of Plaintiff's claim, I need not address coverage under the Business Income, Extra Expense, and Civil Authority provisions.

position in litigation opposite of the position presented to the Insurance Department. *See Sunbeam Corp. v. Liberty Mut. Ins. Co.,* 566 Pa. 494, 500 (2001); *Hussey Copper, Ltd. v. Royal Ins. Co. of Am.*, No. 07-758, 2009 WL 2913959, at *8 (W.D. Pa. Sept. 9, 2009).

Plaintiff cites statements to regulators from insurance industry trade groups that "the adoption of the Virus Exclusion was only meant to 'clarify' that coverage for 'disease-causing agents' has never been in effect, and was never intended to be included, in the property policies." First Am Compl. ¶ 93. Fuel also refers to comments made by insurance representatives to state regulators, where the insurers claimed that "property policies have not been a source of recovery for losses involving contamination by disease-causing agents." *Id.* ¶ 94. Without explanation, Plaintiff characterizes these statements as "misrepresentations" that prevent enforcement of the Virus Exclusion under the doctrine of regulatory estoppel. *Id.* ¶ 100.

The fatal flaw in this argument is that Defendant's litigation position does not diverge from the representations made by the insurance trade groups to regulators. *See Sunbeam Corp.*, 566 Pa. at 500 (stating that regulatory estoppel prevents "litigants from 'playing fast and loose' with the judicial system by adopting whatever position suits the moment"). Both before regulators and this Court alike, the insurer has argued that the policy at issue does not cover disease-causing agents. *See* Def.'s Mem. 26. And Plaintiff acknowledges that in the insurers' submission to regulators, the companies identified "the specter of pandemic or hitherto unorthodox transmission of infectious material" as their motivation to secure approval for a Virus Exclusion. First Am. Compl. ¶ 94. The doctrine of regulatory estoppel, therefore, does not apply, as Defendant has not "switch[ed] legal positions to suit [its] own end." *Sunbeam Corp.*, 566 Pa. at 500. *See also Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, No. 20-3198, 2020 WL 6545893, at *5 (E.D. Pa. Nov. 6, 2020) (Bartle, J.) ("[s]ince defendant does not take a contradictory position to the one

made to regulatory agencies, the doctrine of regulatory estoppel does not apply to this action"); *Kessler Dental Assoc., P.C. v. The Dentists Ins. Co.*, No. 2:20-03376, 2020 WL 7181057, at *3 (E.D. Pa. Dec. 7, 2020) (Wolson, J.) (observing that the position of the industry groups has not changed).

I further conclude that the Virus Exclusion unambiguously bars coverage for "loss or damage" sustained on account of the virus and actions taken in response by the civil authorities. On its face, the clause excludes "loss or damage caused by or resulting from" "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *See* First Am. Compl. Ex. 1, at 33, 35.[5] Plaintiff pleads that COVID-19 is "a highly contagious respiratory virus that has upended daily life and infected more than 5,000,000 people throughout the United States." First Am Compl. ¶ 6. This assessment is shared by numerous public health and civil authorities, who have described COVID-19 as "a disease capable of causing severe symptoms or loss of life, particularly to older populations and those individuals with preexisting conditions." First Am. Compl. Ex. 3, at 2, ECF No. 16-3. Fuel further pleads that coverage was "triggered by damage and loss caused by COVID-19, the related closure orders issued by local, state and federal authorities, and Plaintiff's inability to use and/or restricted use of the Covered Property." First Am Compl. ¶ 45.

These injuries fall squarely within the ambit of a clause that excludes losses "caused by or resulting from any virus." First Am. Compl. Ex. 1, at 33, 35. Fuel argues that the provision is ambiguous because a "pandemic" and the numerous follow-on consequences from a pandemic (including government closures) differ meaningfully from a virus. *See* Pl.'s Am. Opp'n 24–25. This is a distinction without a difference under the language of the Exclusion. Plaintiff's pleadings

---

[5] *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that courts may consider extrinsic evidence when it is "integral to or explicitly relied upon in the complaint").

specifically identify a causal link between the virus, the governmental response, and its losses, thereby establishing that the damages it claims were "caused by or result[ed] from" a virus. *See* First Am. Compl. Ex. 1, at 33, 35. This is underscored by the fact that the insurers explicitly contemplated the "specter of pandemic or hitherto unorthodox transmission of infectious material" when seeking regulatory approval of the Virus Exclusion. *See* First Am. Compl. ¶ 94. For these reasons, I cannot find that the provision's omission of the term "pandemic" renders it ambiguous. *See Newchops Restaurant Comcast LLC v. Admiral Indemnity Co.*, No. 20-1949, 2020 WL 7395153, at *8 (E.D. Pa. Dec. 17, 2020) (Savage, J.) (applying Virus Exclusion and observing that insurance trade groups specifically mentioned "the specter of pandemic" when filing for approval of the provision).[6]

Finally, Fuel claims that the Virus Exclusion cannot extend to "extra expenses," as the clause "only excludes coverage for loss or damage." First Am. Compl. ¶ 90. This argument is belied by the structure of the policy. Section A addresses "additional coverages," which include the provisions pertaining to business income (subsection g), extra expense (subjection h), and civil authority (subsection j). *See* First Am. Compl. Ex. 1, at 13. These coverages are subject to limitation under section B, which addresses "Exclusions." *Id.* at 15 (stating that the policy "insures against direct physical loss unless the loss is … excluded in Section B. EXCLUSIONS). This limitation is also present within the Extra Expense provision itself, as well as the civil authority provision, which adopts the same definition of extra expense. *Id.* at 19, 20 (restricting extra

[6] As support for its position, Plaintiff cites *Urogynecology Specialist of Florida LLC v. Sentinel Insurance Company*, where a district court declined to deny coverage on the basis of a virus exclusion provision. No. 6:20-1174-Orl-22, 2020 WL 5939172 (M.D. Fl. Sept. 24, 2020). The provision differed from the language at issue here, as it addressed "fungi, wet rot, dry rot, bacteria or virus." *Id*. at *3. The court's determination appeared to rest on 1) the fact that certain coverage forms were not presented to the court (an issue not present here) and 2) that the COVID-19 pandemic constitutes "unique circumstances" that did not "logically align" with other pollutants identified by the policy, such as fungi. *Id.* at *4. I am not persuaded by the reasoning in *Urogynecology.*

expense coverage to "loss or damage … caused by or result[ing] from a Covered Cause of Loss"). Because the Virus Exclusion is set forth within Section B, it operates as a limit on coverage for all "direct physical loss." *Id.* at 15. Plaintiff's argument that it may recover extra expenses is therefore untenable.

B. "Reasonable Expectations" of the Insured

Plaintiff finally argues that "Pennsylvania law allows for the reasonable expectations of the insured to supersede policy language which might otherwise deny coverage." Pl.'s Am. Opp'n 31. In setting forth the contours of the "reasonable expectations" doctrine, the Supreme Court of Pennsylvania has made clear that "courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled." *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 594 (1978). This is in part because "the expectations of the insured are in large measure created by the insurance industry itself," which may offer representations that "may or may not accurately reflect the contents of the written document." *Id*. *See also Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 455 (1987) (noting that an insured's reasonable expectations should be fulfilled, even when a policy is unambiguous, where an insurer unilaterally changes the scope of coverage without notifying the insured). But the reasonable expectations doctrine is subject to an important limitation: "an insured may not complain that [its] … reasonable expectations were frustrated by policy limitations which are clear and unambiguous." *Consolidated Rail Corp. v. ACE Property & Casualty Ins. Co.*, 182 A.3d 1011, 1026 (Pa. Super. Ct. 2018) (*citing St. Paul Mercury Ins. Co. v. Corbett*, 630 A.2d 28, 30 (1993)).

In general, the doctrine applies where the insurer unilaterally changed the scope of coverage after Plaintiff had purchased the policy or where other affirmative representations by the carrier or its representative created an expectation of coverage. *See e.g.*, *UPMC Health System v.*

*Metropolitan Life Ins. Co.*, 391 F.3d 497, 503 (3d Cir. 2004) (allowing a court to consider otherwise excluded parol evidence in determining the reasonable expectations of the parties). In the absence of such allegations here, I must look to the written policy to determine whether Plaintiff's expectations were reasonable. Because I have concluded that the policy provisions at issue unambiguously preclude coverage, I cannot find that Plaintiff's "reasonable expectations were frustrated." *Consolidated Rail Corp.*, 182 A.3d at 1026.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss must be granted. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge